IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEOU HONG, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 10-5889 |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

**OPINION**

**Slomsky, J.**                                                                                              **March 21, 2012**

I.  INTRODUCTION

On November 2, 2010, Plaintiff Peou Hong ("Plaintiff") filed a *pro se* Complaint against Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"). (Doc. No. 3.) In the Complaint, Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final decision denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").[1] On September 30, 2011, United States Magistrate Judge Linda K. Caracappa filed a Report (Doc. No. 14) recommending that the Court deny Plaintiff's Request for Review and enter judgment in favor of Defendant and against Plaintiff.

Before the Court are Plaintiff's Objections to the Report and Recommendation (Doc. No.

---

[1] When Plaintiff filed the SSI application, she also filed an application for disability insurance benefits under Title II of the Act. (Administrative Record ("Admin. R.") at 13.) As explained below, Plaintiff later withdrew her Title II claim because she was not eligible for Title II benefits. (Id.)

1

15) and Defendant's Response (Doc. No. 16).  Pursuant to 28 U.S.C. § 636(b)(1), the Court will make a *de novo* determination of the portions of the Report and Recommendation to which objection has been made.  After an independent review of the record and for reasons that follow, the Court finds that the Objections lack merit, and adopts and approves in its entirety the Report and Recommendation.

## II.    PROCEDURAL HISTORY

On May 5, 2008, Plaintiff filed an application for disability insurance benefits ("DIB") with the Social Security Administration ("SSA").  (Administrative Record ("Admin. R.") at 13.)  On May 5, 2008, Plaintiff also filed an application for Supplemental Security Income ("SSI").  (Id.)  In both applications, Plaintiff alleged a disability beginning on April 1, 2006.  (Id.)

On September 26, 2008, these claims were denied.  (Admin. R. at 13.)  On October 20, 2008, Plaintiff filed a written request for a hearing pursuant to 20 C.F.R. §§ 404.929 and 416.1429.  (Id.)  The request was granted and on March 5, 2009, Plaintiff, who was represented by counsel, appeared before Christine McCafferty, Administrative Law Judge ("ALJ").  (Id. at 13, 19.)  Plaintiff and James H. Earhart, "an impartial vocational expert," testified at the hearing.  (Id. at 13.)

On March 19, 2009, Judge McCafferty, pursuant to the sequential evaluation process applicable to a claim of disability,[2] issued a decision denying Plaintiff's claim.[3]  (Admin. R. at

---

[2] 20 C.F.R. §§ 404.1520(a) and 416.920(a).  See also Part III, *infra*.

[3] Upon advice of counsel, Plaintiff withdrew her application for disability insurance benefits.  (Admin. R. at 13, 24-25.)  Therefore, the ALJ's decision addressed only her application for SSI.  (Id.)

13-19.) On October 22, 2010, the Appeals Council denied Plaintiff's request for review, making Judge McCafferty's decision the final decision of the Commissioner. (Id. at 1-3.)

On November 2, 2010, Plaintiff filed her Complaint in this Court against the Commissioner. (Doc. No. 3.) After both parties submitted briefs and documents in accordance with this Court's Procedural Order of November 5, 2010 (Doc. No. 5), the Court referred the matter to United States Magistrate Judge Linda K. Caracappa for a Report and Recommendation. (Doc. No. 13.) On September 30, 2011, Judge Caracappa filed the Report and Recommendation. (Doc. No. 14.) On October 12, 2011, Plaintiff filed Objections.[4] (Doc. No. 15.) On October 26, 2011, Defendant filed a Response to Plaintiff's Objections.[5] (Doc. No. 16.) As stated previously, the Court must now "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### III. LEGAL STANDARD

When a district court reviews a final decision of the Commissioner of Social Security, the court must determine whether the record shows substantial evidence to support the Commissioner's decision.[6] 42 U.S.C. §§ 405(g), 1383(c)(3). In making this decision, the court

---

[4] The Court will cite Plaintiff's Objections throughout the Opinion as Doc. No. 15.

[5] The Court will cite Defendant's Response throughout the Opinion as Doc. No. 16.

[6] 42 U.S.C. § 405, which governs the procedure for reviewing Social Security Benefit applications, states that the Commissioner is "directed to make findings of facts and decisions" as to eligibility for benefits. Pursuant to § 405(b)(1), if an applicant wishes to contest a decision of the Commissioner, the Commissioner must offer the applicant a hearing. An ALJ conducts

reviews whether there is substantial evidence to support the Commissioner's decision that the plaintiff is not disabled. Substantial evidence is defined as "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

An ALJ, rendering a decision on behalf of the Commissioner, must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975). The ALJ "must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects." Ray v. Astrue, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009) (quoting Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)). Although the ALJ does not have to make reference to every relevant medical note in a voluminous medical record, the court expects the ALJ, as the fact finder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003). Simply referring to "the record" as a whole is insufficient. Abshire v. Bowen, 662 F. Supp. 8, 9 (E.D. Pa. 1986). See Carter v. Apfel, 220 F. Supp. 2d 393, 397 (M.D. Pa. 2000).

A claimant proves she has a "disability" when she demonstrates a medically determinable basis for an impairment that prevents her from engaging in any substantial gainful activity

---

the hearing, after which a decision is rendered which affirms, modifies, or reverses the decision of the Commissioner. Therefore, for purposes of this Opinion, the terms "ALJ" and "Commissioner" will be used interchangeably.

("SGA") for a statutory 12-month period. 42 U.S.C. § 412(d)(1). In order to determine if a claimant possesses an impairment that prevents her from engaging in any substantial gainful activity, an ALJ uses a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

**IV.     FACTUAL BACKGROUND**

    **A.     Plaintiff's History and Characteristics**[7]

Plaintiff Peou Hong was born on March 9, 1962 and is 50 years of age. (Admin. R. at 38.) She immigrated alone to the United States from Cambodia in 1983 after her family

---

[7] Unless otherwise noted, the facts setting forth Plaintiff's history and characteristics are taken from her testimony at the March 5, 2009 hearing.

members were killed or passed away. (Id. at 23, 26-27.) She is unmarried, has no children, and lives with friends in Philadelphia, Pennsylvania. (Id. at 26-27.) Other than people she lives with, she does not know many people in Philadelphia. (Id. at 32.)

Plaintiff did not complete school in Cambodia and has a limited education. (Admin. R. at 23, 26.) She also has limited proficiency in speaking English. (Id. at 23, 33.) In the past, she has worked as a housekeeper at a hotel and as a handpacker at a toy factory. (Id. at 28-29, 35.) She does not have a good memory of her work history. At the hearing, she testified that she has not worked since 2000 or 2001 (id. at 28), but her work history report states that she worked at a factory from 2000 to 2001, and at a hotel from 2004 to 2005 (id. at 124). She receives public assistance, which helps her to pay rent and purchase groceries. (Id. at 31-32.)

The memories of her family and the war in Cambodia cause Plaintiff to often become sick, tired, and exhausted. (Admin. R. at 30.) She has contemplated suicide (id. at 29, 33), and on two occasions she has been admitted to hospital emergency rooms with complaints of depression (id. at 34; 317-32; Doc. No. 14 at 18). At night Plaintiff has difficulty sleeping. (Admin. R. at 34.) She receives medical treatment for depression and high blood pressure. (Id. at 29.) She attends weekly or bi-weekly therapy sessions, and picks up medicine monthly. (Id. at 29, 33.) When she runs errands described above, she is driven by a friend she lives with because she is afraid to use public transportation. (Id. 32-33.) Other than leaving the house to attend therapy sessions, to pick up medicine, or to purchase groceries, Plaintiff's activities are limited to cooking food, sometimes watching television, and occasionally cleaning the house. (Id. at 30.)

### B. Testimony of the Vocational Expert

Vocational expert ("VE") James H. Earhart testified at the administrative hearing. (Admin. R. at 35-37.) He characterized Plaintiff's past work as unskilled and requiring light exertion. (Id. at 35-36.) The ALJ asked the VE the following hypothetical:

> [A]ssume an individual of claimant's age, education, and work experience . . . , not speaking English, having the following residual functional capacity, being able to perform at the medium level of exertion, but being limited to simple, repetitive tasks with only occasional changes in the work setting. Could that individual return to claimant's past relevant work?

(Id. at 36.) In response, the VE stated that this person could return to Plaintiff's past relevant work. (Id.) In addition to her past relevant work, the hypothetical person could perform other jobs, including "assembler [of] motor vehicle parts, [at] medium [exertion], unskilled," or "welding machine tender, [at] medium [exertion], unskilled." (Id.)

### C. The Findings of the ALJ to Which Plaintiff Objects

The ALJ found that Plaintiff suffers from severe impairments of hypertension, diabetes mellitus, and a mood disorder (Admin. R. at 15), but that she was not "disabled" within the meaning of the Social Security Act because she is capable of performing her past relevant work as a hotel housekeeper or a toy handpacker (id. at 19). Besides her past relevant work, the ALJ concluded that Plaintiff could work as an assembler, a laundry laborer, or a welding machine tender. (Id.) Accordingly, the ALJ, on behalf of the Commissioner, denied Plaintiff's SSI claim. (Id.)

Plaintiff challenges the following findings of the ALJ, arguing that they were not supported by the record:

7

    1. The Commissioner's decision that Plaintiff was not disabled.[8]

    2. The Commissioner's finding that Plaintiff's allegations were only partially credible.

(Admin. R. at 18-19.)

### D.     The Findings of the Report and Recommendation to Which Plaintiff Objects

Plaintiff objects not only to the findings of the ALJ, she also objects to the manner in which Judge Caracappa analyzed the evidence in recommending that Plaintiff's claims be denied. (Doc. No. 15.) Specifically, Plaintiff asserts Judge Caracappa made an impermissible "exhaustive post[-]hoc analysis of significant portions of the medical evidence of file which were entirely ignored by the ALJ." (Doc. No. 15 at 1.)

## V.    DISCUSSION

### A.     Objection One: The Commissioner's Decision that Plaintiff was Not Disabled

Plaintiff's appeal focuses primarily upon the weight the ALJ attributed to the February 27, 2009 opinion from Dr. Jiwesh Jha of Citywide Counseling Services. (Doc. No. 10 at 7-12; Admin. R. at 18.) Dr. Jha, Plaintiff's treating psychiatrist, completed Plaintiff's Medical Source Statement (Mental) ("Medical Source Statement"). (Admin. R. at 333-34.) The Medical Source Statement is a two-page checkmark assessment reflecting Dr. Jha's opinion about Plaintiff's functional mental abilities in various categories (id.) and reflects his treatment of Plaintiff from March 13, 2008 to February 20, 2009 (Doc. No. 10 at 8-9). In the statement, Dr. Jha rated

---

    [8] As discussed below, objection one focuses on the weight the ALJ gave the opinion of Dr. Jiwesh Jha, Plaintiff's treating psychiatrist. Plaintiff argues that the decision of the ALJ that Plaintiff is not disabled is erroneous because the ALJ impermissibly ignored substantial supporting evidence from Plaintiff's treating sources. See Part V, *infra*.

Plaintiff's functional mental abilities as "poor" with respect to several categories. (Admin. R. at 333-34; Doc. No. 10 at 8.)

Although Dr. Jha was Plaintiff's treating psychiatrist, he did not conduct her therapy sessions. (See Admin. R. at 199-217; 337-63) Instead, Plaintiff attended hour-long therapy sessions with various therapists through Citywide Counseling Services. (Id.) Progress notes from the therapy sessions show treatment from March 13, 3008 to February 20, 2009. (Id.) Even though the time period of treatment by Dr. Jha and the therapists is the same, Dr. Jha's February 27, 2009 assessment contradicts the progress notes from Plaintiff's therapists. On several occasions, Plaintiff's therapists commented on her good eye contact and appropriate mood and affect. (Id. at 199, 200, 202-06, 209-10, 348-63.) In view of these inconsistencies, the ALJ gave Dr. Jha's assessment less weight than other assessments on the record.

At the March 5, 2009 hearing, the ALJ acknowledged that Dr. Jha's conclusions, "if accept[ed] as fully credited," would support a finding of a disability such that Plaintiff could not work. (Admin. R. at 36.) In reaching the conclusion that Plaintiff was not disabled, however, the ALJ found that the conclusions of Dr. Jha were inconsistent with "the record as a whole," citing clinical progress notes from her therapy sessions. (Id. at 18.) Moreover, the ALJ discussed the August 28, 2008 psychiatric review of Dr. Paul Taren, the state agency consultant. (Id.) The ALJ cited the following findings of Dr. Taren as persuasive: (1) the finding that Plaintiff has "mild" functional limitations for daily living activities and social functioning; and (2) the finding that Plaintiff has "moderate" functional limitations for maintaining concentration, persistence, or pace. (Id.) Because the ALJ found that the opinion of Dr. Taren "[was] supported by the medical record in its entirety," the ALJ gave Dr. Taren's assessment "significant" weight and

determined that Plaintiff is not disabled within the meaning of the Social Security Act. (Id.)

In objection one, Plaintiff claims that Dr. Jha's Medical Source Statement demonstrates that Plaintiff "is beset by work[-]preclusive mental health limitations." (Doc. No. 10 at 7.) Plaintiff argues that because Dr. Jha was the treating psychiatrist, his Medical Source Statement should have been given substantial weight by the ALJ, and that the ALJ impermissibly disregarded the Medical Source Statement. (Id.; Doc. No. 15 at 8, 10.)

As Judge Caracappa noted in the Report and Recommendation, while controlling weight *may* be given to the opinion of a treating physician, the ALJ is not required to do so when the evidence does not support the treating physician's conclusions, or when there is contrary medical evidence. (Doc. No. 14 at 15 (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985); Frankenfeld v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988)).) Moreover, the Third Circuit has recently held:

> [T]he opinion of a treating physician does not bind the ALJ on the issue of functional capacity. See Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994) (providing that "a statement by a plaintiff's treating physician supporting an assertion that [plaintiff] is disabled or unable to work is not dispositive of the issue" (internal quotation marks omitted)).

Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). Given these principles, "where the findings of a physician are inconsistent with other evidence of record and cannot be reconciled with the contradictory evidence, it follows that a judge must reject either the findings of the physician or the contradictory evidence." Gasaway v. Astrue, No. 10-2902, 2011 WL 1883130, at *8 (E.D. Pa. May 17, 2011). As discussed above, Judge Caracappa and the ALJ found several inconsistencies between Dr. Jha's Medical Statement and progress notes from the therapy

sessions. Additionally, the ALJ attributed significant weight to the psychiatric report of Dr. Taren. Thus, the ALJ was permitted to reject the opinion of Dr. Jha and attribute greater weight to other evidence. Consequently, claim one of the request for review will be denied.

    **B.**  **Objection Two: The Commissioner's Credibility Determination**

  Next, Plaintiff objects to the ALJ's conclusion that her allegations are only partially credible. (Doc. No. 10 at 12-17.) Plaintiff asserts that the ALJ erred in finding that the record contained inconsistencies concerning Plaintiff's daily activities, medications, and physical symptoms. (Id. at 14-15.) As discussed above and below, substantial evidence supports the ALJ's credibility determination regarding the effect of Plaintiff's medications and her physical symptoms.

  At the outset, the Court agrees with Judge Caracappa that the ALJ's focus on discrepancies regarding Plaintiff's daily activities of cooking and watching television was "hairsplitting." (Doc. No. 14 at 20.) In her written application, Plaintiff stated that she prepares meals "1-2 times per day or 2 times per week" (Admin. R. at 115), and at the hearing she stated that "[s]ometime[s] I try to cook myself, try to cook food, but sometime[s] it overcook[s] so I just sit down on the couch" (id. at 30). These discrepancies are not inconsistent enough to affect Plaintiff's credibility. Likewise, writing in her application "watch T.V." (id. at 113) is not different enough from testifying "[s]ometime[s] I watching [sic] TV" (id. at 30) to affect Plaintiff's credibility.

  However, as noted above, the ALJ's credibility determination rested on other discrepancies in the record regarding Plaintiff's medications and physical symptoms. Here, the

11

ALJ's credibility determination regarding the effects of Plaintiff's medications and her physical symptoms is supported by substantial evidence.  Regarding the effects of the medication, Plaintiff's own testimony that her medications help for only "2 hours" (Admin. R. at 33) contradicts medical progress notes showing the positive effects of her medication (id. at 199, 202-04, 210, 349, 352, 354-60, 362-63).  Regarding her physical symptoms, Plaintiff's testimony that she is weak, has little energy, and pain throughout her body (id. at 30, 33; Doc. No. 10 at 15) contradicts progress notes indicating that she appeared in good health during therapy sessions (id. at 199, 200, 202-06, 209-10, 348-63).  These inconsistencies are but a few of several discrepancies in the record.  (See Doc. No. 14 at 21-23.)  Because the ALJ's finding that Plaintiff's allegations are only partially credible is supported by substantial evidence, objection two will be denied.

        **C.**      **Objection Three: The Analysis in the Report and Recommendation and in the Decision of the ALJ**

In her third objection, Plaintiff takes exception to Judge Caracappa's analysis, characterizing the Report and Recommendation as "an exhaustive post[-]hoc analysis of significant portions of the medical evidence of [sic] file which were entirely ignored by the ALJ."  (Doc. No. 15 at 1.)  Plaintiff argues that because the ALJ ignored the evidence of the treating physician, Judge Caracappa's review of the record is an impermissible attempt to justify the ALJ's decision.  (Doc. No. 15 at 4.)  The Commissioner argues that Judge Caracappa's approach was appropriate and not a post-hoc justification of the decision of the ALJ.  (Doc. No. 16 at 4-5.)  For reasons that follow, Plaintiff's third objection will be denied.

First and foremost, the role of the reviewing court is to determine whether the

determination of the ALJ is supported by substantial evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). The Report issued by Judge Caracappa and the discussion above demonstrate that the ALJ's decision was supported by substantial evidence. Furthermore, the Court is not persuaded that Judge Caracappa engaged in a post-hoc justification of the decision of the ALJ. Rather, Judge Caracappa reviewed the record as a whole, applying the substantial evidence standard. This kind of review is permissible. See Gaul v. Barnhart, No. 07-351, 2008 WL 4082265, at *5 n.6 (E.D. Pa. Aug. 25, 2008) (noting that the reviewing court must examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence); Knox v. Astrue, No. 09-1075, 2010 WL 1212561, at *7 (W.D. Pa. May 26, 2010) (stating that the court is not required "to read the ALJ's opinion in a vacuum").

The approach of the ALJ was also permissible. When considering a social security appeal, an ALJ must "explicitly weigh the evidence," Sykes v. Apfel, 228 F.3d 259, 266 (3d Cir. 2000), and explain a rejection of any of the evidence, Schaudeck v. Commissioner of SSA, 181 F.3d 429, 433 (3d Cir. 1999). Here, the ALJ addressed the Medical Source Statement by stating, "[a]s for the opinion evidence, a medical source statement from Dr. Jha, indicating 'poor' limitations (Exhibit 14F), is inconsistent with the record as a whole as it is not supported by the clinical progress notes, which indicate that she had good eye contact, and that her mood and affect were appropriate." (Doc. No. 14 at 15; Admin. R. at 18.) This statement by the ALJ demonstrates that she considered the Medical Source Statement but found inconsistencies in the progress notes.

The ALJ was also confronted with contradictory medical opinions from Dr. David Knox and Dr. Paul Taren. (Admin. R. at 18.) Dr. Knox found that Plaintiff had no physical

13

limitations, and Dr. Taren, as discussed above, found that Plaintiff had "mild" limitations relating to daily activities and social functioning and "moderate" limitations relating to concentration, persistence, or pace. (Id.) It is clear from the decision of the ALJ that she considered Dr. Jha's opinion along with those of Dr. Knox and Dr. Taren. (Id.) However, as already noted above, when confronted with contradictory evidence, the ALJ was in the position of either crediting the opinion of Dr. Jha or crediting the evidence that undermined his opinion. Here, the ALJ accepted the latter evidence, finding that the record as a whole supported giving greater weight to the progress notes and the opinions of Dr. Knox and Dr. Taren.

After a review of the decision of the ALJ and Judge Caracappa's Report, and this Court's own review of the record, it is clear that the ALJ and Judge Caracappa reviewed the record before them and sufficiently discussed the reasons why substantial weight was not given to Dr. Jha's assessment. Moreover, substantial evidence supports the Commissioner's decision to deny Plaintiff's SSI appeal. Accordingly, Plaintiff's objections to Judge Caracappa's Report and Recommendation will be denied.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will approve and adopt the Report and Recommendation of Magistrate Judge Linda K. Caracappa. (Doc. No. 14.)

An appropriate Order follows.